UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
STEVEN CATANIA,

                        Plaintiff.

              - against -

COUNTY OF NASSAU,
DETECTIVE ANTHONY J MONTESANO #
1447, DETECTIVE ANTHONY J UVENA # 8976,
THE SUBURBIA APARTMENTS, AND JOHN
MCGRATH,

                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT**

Case Number: 22-3324

**JURY TRIAL DEMANDED**

Plaintiff Steven Catania, by his attorneys, Law Office of Caner Demirayak, Esq., P.C., complaining of the defendants, respectfully alleges as follows:

### **Introduction**

1. On November 13, 2020, Steven Catania (hereinafter "Mr. Catania") was serving as the designated driver for his friend. He was driving his friend back to his apartment at the Suburbia Apartments (hereinafter "Suburbia") located at 400 Fulton Street, Farmingdale, New York 11735.

2. On that night Mr. Catania was driving responsibly and was sober. He was not committing any crimes or violating any traffic law or rules. However, due to poor weather conditions and poor directions from his drunk friend, he accidentally drove onto the lawn of the Suburbia complex, and his vehicle became stuck.

3. The Nassau County Police Department (hereinafter "NCPD") responded to the scene, created a report and towed Mr. Catania's vehicle off of the Suburbia law.

4. The responding NCPD officers did not issue any citations and did not arrest Mr. Catania as it was clearly an accident, appropriately handed via civil methods or insurance. There were no crimes or violations committed.

1

5. When John McGrath (hereinafter "McGrath"), the treasurer of Suburbia noticed the damage to the lawn and realized the insurance deductible that must be paid and so he decided to create a fraudulent claim that Mr. Catania drove over the lawn twice and zig zagged and claimed a video supported the claim. There never was a video and McGrath did not witness anything.

6. Three days later on November 16, 2020 McGrath met with Detectives Anthony J Montesano (hereinafter "Montesano") and Detective Anthony J Uvena (hereinafter "Uvena") and made his fraudulent claim to them. He claimed a video existed but did not supply the detectives with it. The detectives proceeded to file charges against Mr. Catania for criminal mischief without reviewing any video footage.

7. Mr. Catania would then be arrested on two separate occasions on January 18, 2021 and February 21, 2022, made to retain an attorney, incurred $2,844 in fees, and appeared in criminal court at least 6 times. The alleged video was never turned over and McGrath did not cooperate in the prosecution. As such, on February 3, 2023 the Nassau County District Attorney's Office (hereinafter "NCDA") moved to dismiss on the basis of McGrath's refusal to cooperate. Mr. Catania should never have been charged and McGrath and Suburbia should have just pursued the damage claim via insurance. Indeed, they opened a claim under Mr. Catania's State Farm Insurance policy, but never followed through on it.

8. Plaintiff now brings this civil rights action seeking relief for the violation of plaintiff's rights secured by 42 USC 1983, 1985, and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and for violations of plaintiff's federally protected procedural and substantive due process rights. Plaintiff's claims arise from an incident that occurred on November 13, 2020 and arrests of January 18, 2021 and February 21, 2022. These claims accrued on February 3, 2023 when all criminal charges were dismissed.

9. Plaintiff seeks compensatory and punitive damages from the individual defendants, compensatory damages from the municipal, governmental and agency defendants, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

## Jurisdiction

10. This action is brought pursuant to 42 U.S.C. 1983, 1985 and 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution.

11. As such jurisdiction of this Court is founded upon 28 U.S.C. 1331, 1343 and 1367.

12. Plaintiff exhausted all administrative remedies prior to commencement of this action and timely filed a Notice of Claim upon the County of Nassau via the County Attorney prior to commencement.

13. Plaintiff appeared for and completed all conditions precedent to suit including appearing for and completing a General Municipal Law 50-h statutory hearing and providing all requested authorizations for release of records.

## Venue

14. Venue is properly laid in the Eastern District of New York pursuant to 28 U.S.C. 1391(b), as the district in which the claims herein arose.

## Parties

15. Plaintiff, Steven Catania is resident of the County of Nassau, State of New York.

16. Defendant, County of Nassau, maintains the NCPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the county law. Such defendant, through its various agents and employees violated plaintiff's rights as described herein.

17. At all times hereinafter mentioned the defendants, Montesano and Uvena, either personally or through their employees were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York, County of Nassau, and the NCPD.

18. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment with County of Nassau within the NCPD.

19. At all times hereinafter mentioned, the individually named defendants, Montesano and Uvena, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

20. Defendant Suburbia owns or maintains or is otherwise responsible for the premises and lawn at 400 Fulton Street, Farmingdale, New York 11753.

21. Defendant McGrath is and was the treasurer of Suburbia or the business entity created for the management of Suburbia.

22. Defendant McGrath acted under color of state law in initiating the prosecution against Mr. Catania by submitting fraudulent information and fabricated the existence of a video to commence an unlawful arrest and prosecution of Mr. Catania.

23. Defendant Suburbia is vicariously liable for McGrath's actions or it otherwise directly liable as he was an officer of it at the commencement of the fabricated prosecution.

**Statement of Facts**

<u>A Motor Vehicle Incident Occurs Which Results in no Finding of Any Suspicion or Cause to Believe a Crime or Traffic Violation Had Been Committed</u>

24.     On November 13, 2020 at 10:59 a.m., Mr. Catania accidentally drove his 2006 Ford motor vehicle onto the lawn of Suburbia at 400 Fulton Street, Farmingdale, New York 11753 and became stuck.

25.     NCPD responded to the scene and police officer Foster (hereinafter "PO Foster") created a police accident report. PO Foster did not issue any citations to Mr. Catania and did not charge him with any crimes nor arrest him. Mr. Catania's vehicle was towed from the scene.

26.     PO Foster notified the treasurer of Suburbia, McGrath and listed his phone number in the report. The damage was listed as to the grass/sod on the lawn.

27.     Mr. Catania reported that poor visibility that night in the area caused the incident. PO Foster listed in his report that view obstructed/limited was the contributing factor for the incident.

<u>Initiation of Criminal Charges on the Basis of False Statements and Fabricated Evidence</u>

28.     On November 16, 2020 defendant, McGrath on behalf of Suburbia, provided false, misleading and fabricated information in order to create a criminal complaint against Mr. Catania.

29.     McGrath falsely claimed that he witnessed Mr. Catania driving over the lawn and zig zagging before the incident. McGrath falsely claimed that Mr. Catania did so on two occasions. McGrath fabricated that a video existed depicting the zig zagging of Mr. Catania's vehicle on the lawn.

30.     All of these statements were not supported by the investigation by the first responding, PO Foster, who found no such damage and did not find any violations or criminality by Mr. Catania.

31. The criminal complaint and supporting deposition were made on the basis of false allegations sworn to by defendant, McGrath and with the assistance of defendant Suburbia.

32. Defendants McGrath and Suburbia provided these false statements to the NCPD and detectives Montesano and Urena knowing that there was no basis to support the allegations.

33. These and other allegations, information and evidence were false and the defendants McGrath and Suburbia knew they were false when they made them.

34. Defendants detectives Montesano and Uvena knew that the statements made by McGrath and Suburbia were not true and unsubstantiated. However, they ignored the clear baselessness of the claims.

35. The detectives did not obtain or view the video that McGrath and Suburbia fabricated that existed.

36. The detectives did not observe the fabricated zig zagging damage to the lawn.

37. On November 16, 2020, defendants Montesano and Urena encouraged, coerced, intimidated, and otherwise compelled a McGrath and Suburbia to sign a sworn document with the false and fabricated information within it to submit as false information to the NCDA.

38. On November 16, 2020 defendants detectives Montesano and Uvena knew the statements and information were not true, unverified and insufficient to provide any cause to support a criminal charges against Mr. Catania.

39. The defendants relied upon the statements and fabrications anyway knowing the falsity and baselessness of the statements, and without being able to obtain or view the fabricated video.

40. It was later learned during criminal proceedings that the video was not obtained by the defendant detectives in their investigation.

41.     During the criminal proceedings McGrath and Suburbia did not provide a video to the NCDA and refused to appear for pre-trial hearings.

42.     However, the defendants still refused to dismiss the case, until February 3, 2023 immediately before the pre-trial hearing due to the absence of the video and the refusal of McGrath and Suburbia to cooperate.

False Arrest in the Absence of Probable Cause

43.     On January 18, 2021, despite the lack of probable cause, defendants Montesano and Uvena filed charges against Mr. Catania and proceeded to arrest him. This was also done despite any evidence of wrongdoing on the part of the plaintiff. This was done despite 60 days going by and the detectives never having obtained or viewed the fabricated video of McGrath and Suburbia.

44.     On January 18, 2021 the plaintiff was falsely arrested and detained by defendants Montesano and Uvena. Plaintiff was booked, spent several hours incarcerated and was then released. He was advised that he was being released and to look out in the mail for a desk appearance ticket return date for criminal court. He was not advised of the charges and not given a date to appear.

45.     Mr. Catania did not receive any documents in the mail.

46.     However, on February 21, 2022, Mr. Catania was arrested for a second time and brought to court.

Arraignment and Initiation of Criminal Charges

47.     Plaintiff was arraigned on a misdemeanor criminal complaint on the basis of false allegations supplied by defendants McGrath and Suburbia and relied upon by defendants Montesano and Urena on or about February 21, 2022.

48. Pursuant to these false statements, false information and fabricated evidence, plaintiff was charged with criminal mischief in the fourth degree, a class A misdemeanor.

49. The individual defendants all knew these statements were false when they made them to the NCDA or relied upon them knowing they were unverified and unsubstantiated.

50. The defendants falsely swore that plaintiff intentionally zig zagged with his car on two occasions over the Suburbia lawn despite the absence of any proof of such as established by PO Foster's initial investigation.

51. The defendants falsely swore that a video captured the two events knowing it was not true.

52. The defendants still proceeded to arrest and initiate the prosecution against Mr. Catania in the absence of any confirmed video proof.

53. Plaintiff was released on his own recognizance and was recommended by the judge to obtain a paid attorney.

54. Plaintiff was made to continue to return to court for at least 6 times, miss work, lose income, and incur legal fees in excess of $2,500.

Dismissal and Favorable Termination

55. Eventually, on February 3, 2023 the prosecution moved to dismiss the criminal complaint and such motion was granted.

56. The decision to investigate, arrest and prosecute plaintiff was objectively unreasonable under the circumstances.

57. At no time did there exist sufficient cause to seize or arrest plaintiff, nor could the defendants have reasonably believed that such cause existed.

58. The factual allegations and testimony sworn to by the individual defendants were materially false and deliberately made to justify the illegal arrest of plaintiff.

59. At no time did defendants take any steps to intervene in, prevent or otherwise limit the misconduct against plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
### False Arrest/Unlawful Imprisonment under 42 USC 1983

60. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 59 with the same force and effect as if fully set forth herein.

61. Defendants Montesano and Urena arrested and/or created a custodial situation of plaintiff Steven Catania without probable cause, causing him to be detained against his will for an extended period of time with no basis in law for such arrest, custody or detainment.

62. Defendants caused plaintiff Steven Catania to be falsely arrested and unlawfully detained.

63. Defendants intended to confine plaintiff Steven Catania and, in fact, confined plaintiff Steven Catania and plaintiff Steven Catania was conscious of the confinement.

64. Plaintiff Steven Catania did not consent to the confinement and the confinement was not otherwise privileged.

65. Defendants McGrath and Suburbia are also liable for false arrest and unlawful imprisonment as they submitted false and fabricated information and evidence under color of law to initiate the charges, arrest and prosecution.

66. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a

jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A SECOND CAUSE OF ACTION
### Malicious Prosecution under 42 USC 1983

67. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 66 with the same force and effect as if fully set forth herein.

68. Defendants initiated, commenced and continued a malicious prosecution against plaintiff Steven Catania.

69. Defendants caused plaintiff Steven Catania to be prosecuted without any probable cause until the charges were dismissed on February 3, 2023.

70. Defendants commenced the prosecution with malice and for no legitimate law enforcement reason. In fact, the prosecution was commenced by McGrath and Suburbia to punish Mr. Catania for accidently damaging their property and because they did not want to pay for their deductible or go through insurance, among other various reasons. Montesano and Urena likewise engaged in malice as they did not obtain or view the video but still proceeded against Mr. Catania for reasons unrelated to the effective administration of justice.

71. Defendants McGrath and Suburbia are also liable for malicious prosecution as they submitted false and fabricated information and evidence under color of law to initiate the charges, arrest and prosecution.

72. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A THIRD CAUSE OF ACTION
### Violation of Right to Fair Trial under 42 USC 1983

73. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 72 with the same force and effect as if fully set forth herein.

74. Defendants created and/or knowingly relied upon false evidence against plaintiff Steven Catania.

75. Defendants utilized this false evidence against plaintiff Steven Catania in legal proceedings.

76. As a result of defendants' creation, reliance on and use of false evidence, plaintiff Steven Catania suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution.

77. Defendants McGrath and Suburbia are also liable for violation of a right to a fair trial as they submitted false and fabricated information and evidence under color of law to initiate the charges, arrest and prosecution.

78. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
### 42 USC 1983 Conspiracy

79. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 78 with the same force and effect as if fully set forth herein.

11

80. Defendants are liable to plaintiff Steven Catania because they agreed to act in concert, with each other, to inflict unconstitutional injuries; and committed overt acts done in furtherance of that goal causing damage to plaintiff Steven Catania.

81. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Municipal Liability under 42 USC 1983

82. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 81 with the same force and effect as if fully set forth herein.

83. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

84. The aforementioned customs, policies, usages, practices, procedures and rules of the County of Nassau and NCPD included, but were not limited to, inadequate screening, hiring, retaining, training and supervising its employees that as the moving force behind the violation of plaintiff Steven Catania rights as described herein. In addition, the County of Nassau and NCPD has failed to properly train its employees with regard to the proper issuance of summonses, and defendant County of Nassau was aware that NCPD officers routinely issued baseless and facially insufficient summonses to individuals in response to summons quota's, depriving said individuals of their constitutional rights. As a result of the failure of the County of Nassau and its NCPD to properly recruit, screen, train, discipline and supervise its officers, including the individual

defendants, defendant County of Nassau has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

85. The foregoing customs, policies, usages, practices, procedures and rules of the County of Nassau and the NC{D constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff Steven Catania.

86. The foregoing customs, policies, usages, practices, procedures and rules of the County of Nassau and the NCPD were the direct and proximate cause of the constitutional violations suffered by plaintiff Steven Catania as alleged herein.

87. The foregoing customs, policies, usages, practices, procedures and rules of the County of Nassau and the NCPD were the moving force behind the Constitutional violations suffered by plaintiff Steven Catania as alleged herein.

88. As a result of the foregoing customs, policies, usages, practices, procedures and rules of the County of Nassau and the NCPD, plaintiff Steven Catania was unlawfully arrested, maliciously prosecuted, denied a fair trial, and was a victim of fabricated evidence,

89. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff Steven Catania's constitutional rights.

90. All of the foregoing acts by defendants deprived plaintiff Steven Catania of federally protected rights, including, but not limited to, the rights to be free from false arrest/unlawful imprisonment, to receive his right to fair trial, and to be free from malicious prosecution.

91. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a

jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

### AS AND FOR A SIXTH CAUSE OF ACTION
### False Arrest/Unlawful Imprisonment Under New York State Common Law

92. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 91 with the same force and effect as if fully set forth herein.

93. Defendants Montesano and Urena arrested and/or created a custodial situation of plaintiff Steven Catania without probable cause, causing him to be detained against his will for an extended period of time with no basis in law for such arrest, custody or detainment.

94. Defendants caused plaintiff Steven Catania to be falsely arrested and unlawfully detained.

95. Defendants intended to confine plaintiff Steven Catania and, in fact, confined plaintiff Steven Catania and plaintiff Steven Catania was conscious of the confinement.

96. Plaintiff Steven Catania did not consent to the confinement and the confinement was not otherwise privileged.

97. Defendants McGrath and Suburbia are also liable for false arrest and unlawful imprisonment as they submitted false and fabricated information and evidence under color of law to initiate the charges, arrest and prosecution.

98. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Malicious Prosecution Under New York State Common Law

99. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs number 1 through 98 with the same force and effect as if fully set forth herein.

100. Defendants initiated, commenced and continued a malicious prosecution against plaintiff Steven Catania.

101. Defendants caused plaintiff Steven Catania to be prosecuted without any probable cause until the charges were dismissed on February 3, 2023.

102. Defendants commenced the prosecution with malice and for no legitimate law enforcement reason. In fact, the prosecution was commenced by McGrath and Suburbia to punish Mr. Catania for accidently damaging their property and because they did not want to pay for their deductible or go through insurance, for various reasons. Montesano and Urena likewise engaged in malice as they did not obtain or view the video but still proceeded against Mr. Catania for reasons unrelated to the effective administration of justice.

103. Defendants McGrath and Suburbia are also liable for malicious prosecution as they submitted false and fabricated information and evidence under color of law to initiate the charges, arrest and prosecution.

104. As a result of the foregoing, plaintiff Steven Catania is entitled to compensatory damages in an amount to be fixed by a jury of at least One Million Dollars ($1,000,000), and is also entitled to punitive damages against the individual defendants in an amount to be fixed by a jury of at least Two Million Dollars ($2,000,0000), plus reasonable attorney's fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

I. Compensatory damages in an amount to be determined by a jury of at least One Million Dollars ($1,000,000);

II. Punitive damages in an amount to be determined by a jury of at least Two Million Dollars ($2,000,000);

III. Costs, interest and attorney's fees, pursuant to 42 USC 1988; and

IV. Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

THE LAW OFFICE OF CANER DEMIRAYAK, ESQ., P.C.

Dated: Brooklyn, New York
May 4, 2024

_____
Caner Demirayak, Esq.
*Attorneys for Plaintiff Steven Catania*
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
718-344-6048
caner@canerlawoffice.com